Werner, J.
 

 The question presented by this appeal is whether the case is one in which it is proper to apply the maxim
 
 res ipsa loquitur.
 
 The plaintiff was a fireman employed by the defendant on one of its locomotives on the 25th of March, 1911, when he was injured by a sudden expulsion of steam and hot water from the boiler into the fire box and thence into the cab where he was stationed in the performance of his duty. The learned trial justice held that the maxim was applicable, and he so instructed the jury. To this charge the counsel for the defendant interposed an exception. The plaintiff was given a verdict and the judgment which followed it was affirmed at the Appellate Division by a divided vote, two of the justices dissenting on the ground that the trial court erred in applying the doctrine of
 
 res ipsa loquitur.
 
 Before proceeding to a closer view of the facts to which we must apply the law, it may be well to consider the contention of defendant’s counsel that the rule never applies to an injury sustained by an employee while in the service of his employer, for if that is the law, this judgment must needs be reversed without reference to the particular facts.
 

 There seems to be a widely prevalent idea in the profession that the conventional relation of employee and
 
 *202
 
 employer is
 
 per se
 
 inimical to the application of the maxim
 
 res ipsa loquitur,
 
 and that the maxim is one specially designed for cases in which a traveler is -injured while on a public highway, or while he is a passenger in the conveyance of a common carrier. This general impression may be due in part to its origin, for it seems at first to have been applied only to cases in which the alleged delinquent’s contractual obligation to the injured person was practically that of an insurer; and in part to its- subsequent extension to actions in which there was no contractual relation whatever between the injured person suing in tort and the party from whom recovery was sought. It may be fairly surmised, at any rate, that the great preponderance of these two classes of cases in the category to which the maxim has been applied has given rise to the occasional expressions in some of the text books and decisions, indicating that its application' is regarded as depending primarily upon the relation of the person injured to the defendant whom he sues; but" from whatever source this view may have sprung, the fact remains that it is not supported by the maxim itself nor by the decisions of this court.
 

 The phrase
 
 res ipsa loquitur,
 
 literally translated, means that the thing or affair speaks for itself. It is merely a short of way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify the conclusion that the accident was caused by negligence. The inference of negligence is deducible, not from the mere happening of the accident, but from the attendant circumstances. “It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred, contain, without further proof, sufficient evidence of the defendant’s duty and of his neglect to perform it. The fact of the casualty and the attendant
 
 *203
 
 circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer.” (Shearman & Redfield on Negligence, sec. 59.) This section was quoted with approval by Judge Cullen in writing for this court in
 
 Griffen
 
 v.
 
 Manice
 
 (166 N. Y. 188, 193), and in that connection he expressed the view that “the application of the principle depends on the circumstances and character of the occurrence, and not on the relation between the parties, except indirectly so far as that relation defines the measure of duty imposed on the defendant.” He quoted also from the opinion of Judge Danforts in
 
 Breen
 
 v.
 
 N. Y. C. & H. R. R. R. Co.
 
 (109 N. Y. 297, 300), in which the author said “ there must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part.” In the
 
 Griffen
 
 case Judge Cullen followed this quotation from the
 
 Breen
 
 case, with the pertinent observation that he could see no reason “ why the rule thus declared is not applicable to all cases or why the probative force of the evidence depends on the relation of the "parties. Of course, the relation of the parties may determine the fact to be proved, whether it be the want of the highest care or only want of ordinary care, and, doubtless, circumstantial evidence, like direct evidence, may be insufficient as a matter of law to establish the want of ordinary care, though sufficient to prove absence of the highest degree of diligence. But the question in every case is the same whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue.” Thus we see that this court is definitely committed to the view that the application of the maxim
 
 res ipsa loquitur
 
 depends, not upon the relation of the
 
 *204
 
 injured person to the person or party who is charged with causing the injury, but upon the explanatory circumstances which surround the happening of the accident. The rule thus expressed has been recognized in the recent cases of
 
 Robinson
 
 v.
 
 Consolidated Gas Co.
 
 (194 N. Y. 37, 41) and
 
 Hardie
 
 v.
 
 Boland Co.
 
 (205 N. Y. 336, 341), and has been followed in many cases in the several Appellate Divisions.
 

 While it is, therefore, the settled law that the maxim is applicable to any case where the facts warrant its application, it is apparent that the employee who invokes it against his employer encounters difficulties that do not hamper the wayfarer in a public place or the passenger in a common carrier’s conveyance. The man who was lawfully upon the hig’hway need go no farther in the first instance than to prove that he was hit by a falling wall
 
 (Mullen
 
 v.
 
 St. John,
 
 57 N. Y. 567) or by a flying missile
 
 (Wolf
 
 v.
 
 Am. Tract Soc.,
 
 164 N. Y. 30, 33;
 
 Hogan
 
 v.
 
 Manh. Ry. Co.,
 
 149 N. Y. 23;
 
 Volkmar
 
 v.
 
 Manh. Ry. Co.,
 
 134 N. Y. 418), and that the thing by which he was injured came from the premises of the defendant. The passenger who was for the time under the protection of a common carrier needs only to show that the train upon which he was riding left the track
 
 (Seyboldt
 
 v.
 
 N. Y., L. E. & W. R. R. Co., 95 N.
 
 Y. 562, 565) or collided with another car or train
 
 (Loudoun
 
 v.
 
 Eighth Ave. R. R. Co.,
 
 162 N. Y. 380) and thus caused his injuries. The reason for the rule in such cases is not far to seek. The owner of a building or structure must exercise a high degree of care to so keep it that the wayfarer on the public streets shall not be injured by falling walls or missiles. The common carrier is under the strict duty to its passenger to keep its cars and tracks in a safe condition, and in all such cases where the plaintiff “has shown a situation which could not have been produced except by the operation of abnormal causes, the onus then rests upon the defendant to prove that the injury was caused without his fault.”
 
 *205
 

 (Seyboldt
 
 v.
 
 N. Y., L. E. & W. R. R. Co.,
 
 95 N. Y. 565, 568.) Ordinarily walls do not fall, missiles do not fly and trains are not derailed when those in control are in the exercise of the requisite care, and, therefore, the inference of negligence follows in logical sequence.
 

 In the nature of things the injured employee who sues his employer must present a much higher degree of proof than is necessary in the case of a wayfarer or passenger. It is to be emphasized, however, that the difference is one of degree and not of kind. This more onerous burden which is placed upon the employee is the natural concomitant of the relation of the parties and of their resultant obligations. The employer is bound merely to the exercise of reasonable care in providing his employee with a safe place in which to work, with proper and adequate tools, appliances and machinery, and with fellow-employees competent for the tasks to which they are assigned. If the injured employee sues at common law and seeks to invoke the maxim, he must necessarily make proof of facts and circumstances which, under the common law, exclude every inference except that of the employer’s negligence. This means that the employee must himself be free from the imputation of contributory negligence; that he is not the victim of the negligence of co-employees; that the injury is not the result of some risk either inherent in the occupation or voluntarily assumed by the employee; and that the accident is one which, in the ordinary course of events, could not have happened if the employer had exercised the degree of care required of bim by the common law. The same rule applies, in a modified degree, where the employee sues under the Employers’ Liability Act, as the plaintiff in this case has done. In such a case the plaintiff must establish facts and circumstances which, under the statute, would entitle him to recover in the absence of a sufficient explanation by the defendant, absolving him from the imputation of negligence. The proof must not be conjectural or specula- '
 
 *206
 
 tive, but must consist of evidence which, tested by the ordinary rules of experience and observation, points to the single conclusion that the employer’s omission of a duty which he owes to his employee was the sole efficient cause of the accident.
 
 (Ferrick
 
 v.
 
 Eidlitz, 195
 
 N. Y. 248, 252.)
 

 The next question, in logical progression, is whether the plaintiff has established his case by facts and circumstances which negative the existence of any cause for the accident by which he was injured, save the negligence of the defendant. The plaintiff, as has been stated, was a locomotive fireman in the employ of the defendant. On the 25th of March, 1911, he and his engineer left Malone on engine No. 2055 for Moira to assist in bringing back a train. After arriving at Moira the engine was turned around and coupled to another engine already attached to a train, and a start was made for the return to Malone. Suddenly there occurred an explosion in the fire box of the engine which drove the doors from their fastenings, and expelled fire and boiling water into the cab, and burned and scalded the plaintiff, and blew him out of the cab to the ground with such force as to bruise him. Although this accident was of an unusual character, it will be assumed for the purposes of this discussion that it was not such an occurrence as would, in and of itself, justify the application of the maxim
 
 res ipsa loquitur,
 
 for the engine was then in the custody and control of the plaintiff and his engineer. The mere happening of the accident did not necessarily exclude the inference that it might have heen caused by the negligence of the plaintiff, or without any negligence at all. It was, therefore, necessary for the plaintiff to supplement the proof of the accident with evidence tending to show that it resulted from the failure - of the defendant to exercise ordinary care, either in the selection of the engine or in keeping it in reasonably safe repair. In that behalf the record discloses a number of facts and circumstances that bear upon the accident very
 
 *207
 
 directly and cogently. It appears that the train crews employed by the defendant have nothing to do with the care and inspection of the internal and hidden parts of the engines. That work is committed to a special corps of employees whose place of duty is in the hostelry where the engines are housed, made ready for service, and turned over to the crews designated to take them out. The engineers are charged with the duty of making a report of each trip which shall specify any needed repairs that come under their observation. The engineer Francey, who was on engine 2055 at the time of the accident, testified that he had used it on various specified dates during the month preceding the day of the accident, and that he had orally reported it as leaking, although he had been turning in written reports which made no mention of the fact. While such a circumstance might ordinarily affect the credibility of a witness, all doubt upon this subject is dissipated by the testimony of the defendant’s witnesses showing that the engine was inspected by the foreman of boiler makers on or about March 21st, 1911, and found to be in a leaky condition. Several of defendant’s witnesses testified that the engine had been in the shop at various times during the month on account of leaking flues, and that the last repairs in this regard were made two or three days before the accident. •
 

 After the accident an examination of the engine was made which revealed the probable cause of the trouble. One of the flues, which extend longitudinally through the boiler from the rear flue sheet to another flue sheet next the smoke stack, had been pushed or blown out of its socket in the rear flue sheet so that the forward end of the flue projected several feet beyond the forward flue sheet; thus leaving an opening in the rear flue sheet through which the boiling water and steam were admitted into the fire pot where the explosion was generated. There were 342 of these flues which were each 1% inches
 
 *208
 
 in diameter and about 16 feet in length. These flues are
 
 “
 
 safe ended ” into the flue sheets so that when they are in perfect condition there can be no leakage through them from the boiler. The particular flue that was blown or driven out of its place was in the bottom row of flues where there could be no inspection without taking out the
 
 “
 
 brick arch,” and that could be done only when the boiler was not in steam. There can be no doubt that the explosion by which the plaintiff was injured was due immediately to the displacement of the flue; but the cause of the dislodgement of the flue is not so clear. It is a matter of common knowledge that steam, like electricity, is a capricious and fickle agency which sometimes causes unexpected and unexplainable accidents. If the plaintiff’s case were wholly dependent upon evidence merely showing the happening of this explosion, it might be necessary to hold that he had not proved enough to give him the benefit of the maxim which he invokes. The ultimate question, therefore, is whether he has the support of surrounding circumstances which show that the accident was of
 
 “
 
 such a character as does not ordinarily occur where the party charged with responsibility has exercised the degree of care and caution required by law to avoid such a mishap. ”
 
 (Henson
 
 v.
 
 Lehigh Valley R. R. Co.,
 
 194 N. Y. 205, 211.) We think he has. The defendant’s foreman testified that if • a flue is loose at both ends it would be liable to move from the pressure, and that if a flue is loose at one end it is more liable to move than one that is not loose. It is undisputed that defendant’s chief boiler man inspected this engine on the 21st or 22nd of March and found that a number of flues, about twenty-five, were leaking. These were repaired, but the boiler still leaked on the 24th, and the explosion occurred on the 25th. Since the defendant’s experts had found loose and leaking flues which they repaired, it is reasonable to infer that the displacement of another flue within two or three days
 
 *209
 
 was attributable to the same cause. This was not a part of the locomotive over which the plaintiff had any control, or in respect of which he had, so far as the record discloses, any duty or knowledge. The work of inspection and repair was the work of the defendant, and any failure in this regard was its failure. The almost immediate recurrence of a condition that had led to inspection and repair was circumstantial evidence which tended to show that the work had not been thoroughly done. We think, therefore, that the plaintiff was entitled to rest upon the rule of
 
 res ipsa loquitur,
 
 and that in the absence of a satisfactory and convincing explanation by the defendant, the plaintiff was entitled to recover.
 

 Counsel for the defendant contends that such an explanation has been made. In that regard it appears that the locomotive was of a modern and standard type; that for several months from January, 1910, it was in the main shops of the defendant at Rutland, where it 'was given a thorough overhauling and sent out in perfect condition; that the complaints of leakage made in the early part of 1911 were followed by prompt inspection and complete repair. This was an explanation well calculated indeed to create a serious issue of fact, but we think it would be going too far to hold that it was conclusive as matter of law. The limitations of the rule of
 
 res ipsa loquitur,
 
 and the legal effect of defendant’s explanation, were well stated in the charge to the jury, and we think the judgment entered on the verdict must stand.
 

 The judgment should be affirmed, with costs.
 

 Willard Bartlett, Ch. J., Collin, Cuddeback, Hogan and Cardozo, JJ., concur; Hornblower, J., not sitting.
 

 Judgment affirmed.