### CENTRAL R. CO. OF NEW JERSEY v. PELUSO.

(Circuit Court of Appeals, Second Circuit. January 2, 1923.)

No. 104.

1. **Negligence $\Leftrightarrow$121(2)—Rule of "res ipsa loquitur" stated.**

All that the rule of "res ipsa loquitur" means is that the circumstances involved in or connected with an accident may be of such unusual character as to justify, in the absence of any other evidence bearing upon the subject, the inference that the accident was due to the negligence of the one having possession or control of the article or thing which caused the injury, because in the absence of explanation this is the only fair and reasonable conclusion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Res Ipsa Loquitur.]

2. **Master and servant $\Leftrightarrow$265(5)—Rule of res ipsa loquitur applies.**

The doctrine of res ipsa loquitur is applicable to cases between master and servant including cases under the federal Employers' Liability Act (Comp. St. §§ 8657–8665).

3. **Master and servant $\Leftrightarrow$285(3)—Negligence as to employee injured by falling crane held question for jury under rule of res ipsa loquitur.**

Under the rule of res ipsa loquitur, evidence that one operating a crane on a dock was killed by the breaking of the boom, permitting the crane to overturn and carry him into the water, *held* to justify the denial of a directed verdict for defendant.

---

$\Leftrightarrow$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Trial ⬤⟳260(8)—Refusal of instructions covered by charge given not error.**
Though requested charges on res ipsa loquitur stated the law accurately, where the subject-matter had been covered by the court in his colloquial · charge, defendant could not complain because the trial judge preferred his own language to that of counsel.

In Error to the District Court of the United States for the Southern District of New York.

Action by Anita Peluso, as administratrix of James Peluso, deceased, against the Central Railroad Company of New Jersey. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error to a judgment for $13,313.75 in favor of plaintiff below against defendant below, entered upon the verdict of a jury. The parties will be referred to as aligned below.

The action was brought under the federal Employers' Liability Act, 35 Stat. 65; Act of 1908, c. 149, § 1 (Comp. St. § 8657), to recover damages in behalf of the widow and children of James Peluso, an employee of defendant.

On December 28, 1920, between 1 and 2 o'clock in the afternoon, Peluso was operating a crane on one of defendant's docks at Elizabethport, N. J.

The crane was mounted on a flat car which was standing upon the track nearest to the water. This crane consisted of a car containing the machinery and controls and a lattice work boom to which was attached a bucket, the lips of which could be opened and closed.

The crane was so constructed that it could be swung around in a complete circle.

Peluso had been engaged in unloading iron ore from a barge moored to the dock and placing it in cars which were standing on the second track away from the string piece. He had loaded all of the cars which were available and was waiting for a supply of empty cars. While thus waiting, Kraus, his superior, came down on the dock, and Peluso told Kraus that he had no coal in the bin. There were some cars containing coal standing on a track three tracks away from the track on which the crane was standing. Peluso swung the boom over toward these cars. The crane was standing idle with the bucket hanging over the car. The bucket was not moving. It was not raised nor lowered, but, according to defendant's witness Kraus, "it was just hanging over the car." Kraus, according to his own testimony, had examined the coal bin and saw that there was nearly a week's supply in it. He "hollered" to Peluso and told him not to touch the coal in the cars as he had a week's supply in the bin. Thereupon, Kraus turned around with his back to the crane. It is not disputed that very soon thereafter, the crane overturned backwards into the water and the jury was justified in finding that it carried Peluso with it and he was drowned. Neither Kraus nor any one else saw the occurrence, although Kraus testified that when he turned around, the boom was flying in the air.

Immediately after the accident plaintiff's witness Sheehan, who was operating a tugboat lying in the slip, went over and found the crane in the river; the boom was pointed up to the stringpiece, and "the other part lay on the ground like it was broken. * * * It was broken."

Plaintiff's witness Matson, a detective sergeant on the Jersey City police force, went over immediately after the accident and found the crane in the water and the boom broken, with a portion lying on the ground over the rails. Matson testified that the boom "broke about the center." Asked whether, "with a complete break between the two parts," he answered, "Yes."

Defendant's witness Withers, a then employee of defendant, went over immediately after the accident and testified that the boom was lying across the tracks, 1, 2, and 3.

Plaintiff's witness Strickland, an expert locomotive crane engineer, and "all around engineer master mechanic," testified that the only thing that could make this crane topple over backwards was the breaking of the boom. This testimony was not contradicted.

On the part of defendant there was testimony that immediately before the crane overturned, the boom with the bucket attached was seen to rise and fall the full length of the boom two or three times, and that after the accident a piece of wood about three feet in length and six inches wide was found lying alongside the bucket, and that the side of one of the coal cars looked as if a piece had been "bitten out." The jury by its verdict discarded this testimony.

It is not contested that Peluso was employed at the time in interstate commerce.

At the close of the case, defendant moved for a directed verdict on the ground that there was no evidence of negligence. The motion was denied and the case was sent to the jury with the result supra.

George Holmes, of New York City (Charles E. Miller, of New York City, of counsel), for plaintiff in error.

Sydney A. Syme, of Mt. Vernon, N. Y., for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The verdict of the jury must be regarded as having settled certain essential facts fully disclosed by the testimony, i. e.: (1) That the complete break in the center of the boom caused the crane to overturn and thus carry Peluso to his death by drowning; (2) that the side of the coal car was not caught by the lips of the bucket; and (3) that Peluso did not do anything which contributed directly or indirectly to the chain of events which ended with his death.

Thus the complete break in the center of the boom was the proximate cause of death. That this break was an unusual and, indeed, extraordinary occurrence seems plain without argument. But error is assigned on the ground that the trial judge wrongly held and charged that the case was one to which the doctrine of res ipsa loquitur was applicable.

[1] At the outset, it is desirable to clear away some misapprehension of the meaning of res ipsa loquitur, and this may best be done by quoting from the admirable statement of McLaughlin, J., in Francey v. Rutland R. R. Co., 222 N. Y. 482, 119 N. E. 86:

"The action was tried and submitted to the jury on an erroneous theory as to the application of the rule of res ipsa loquitur. It is not a complicated rule, nor is there difficulty in applying it in a given case, when the reason for its adoption is understood. The phrase usually employed to express the rule, res ipsa loquitur—the thing speaks for itself—may at times tend to obscure rather than to make clear what the rule means. All that is meant is that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of any other evidence bearing upon the subject, the inference that the accident was due to the negligence of the one having possession or control of the article or thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that unless an explanation be given the only fair and reasonable conclusion is that the accident was due to some omission of defendant's duty."

Again, as said by Mr. Justice Holmes in Southern Railway v. Bennett, 233 U. S. 80, 85, 34 Sup. Ct. 566, 567 (58 L. Ed. 860):

"Of course the burden of proving negligence in a strict sense is on the plaintiff throughout, as was recognized and stated later in the charge. The phrase picked out for criticism did not controvert that proposition but merely expressed in an untechnical way that if the death was due to a defective instru-

mentality and no explanation was given, the plaintiff had sustained the burden. The instruction is criticized further as if the judge had said res ipsa loquitur—which would have been right or wrong according to the res referred to."

As also said by Mr. Justice Pitney in Sweeney v. Erving, 228 U. S. 233, 238, 33 Sup. Ct. 416, 417 (57 L. Ed. 815, Ann. Cas. 1914D, 905):

"The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed, by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, res ipsa loquitur—the thing speaks for itself—that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence.

"The doctrine has been so often invoked to sustain the refusal by trial courts to nonsuit the plaintiff or direct a verdict in favor of the defendant, that the application of the rule, where it does apply, in raising a question for the jury, and thus making it incumbent upon the defendant to adduce proof if he desires to do so, has sometimes been erroneously confused with the question of the burden of proof."

See, also, Griffin v. Manice, 166 N. Y. 188, 192 et seq., 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630.

Having thus clearly in mind the correct definition of res ipsa loquitur, it is necessary first to consider defendant's contention that in the national courts, the doctrine does not apply in a case between employee and employer under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), since, as contended, these courts, though applying the doctrine in passenger cases, have refused to apply it in master and servant cases. No such distinction has been recognized by the New York courts.

In the Francey Case, supra, the court quoted the Marceau Case (153 App. Div. 931, 138 N. Y. Supp. 1128) with approval, but it appeared that the jury might have found that the accident was due to either of one of two causes, one of which was the negligence of plaintiff in letting cold water into the boiler. The trial judge had charged that the burden of proof was cast upon the defendant, and McLaughlin, J., pointed out that the burden of establishing negligence rested throughout the trial on the plaintiff and that "the rule of res ipsa loquitur did not shift this burden of proof." There was nothing, however, in the Francey Case which disturbed the holding of the Marceau Case that the maxim, res ipsa loquitur, is applicable to the conventional relation of employee and employer.

We may at once state that we are unable to see any justification in reason for failing to apply the correct doctrine of res ipsa loquitur to an action such as that at bar. The question was so squarely met by a distinguished court in the Marceau Case and so ably dealt with in the opinion of Werner, J. (211 N. Y. 203, 105 N. E. 206, 51 L. R. A. [N. S.] 1221, Ann. Cas. 1915C, 511), that we might well stop with that citation, but for the necessity of examining certain cases in the federal courts, which it is urged hold contrary to the New York rule.

It may, at once, be conceded as matter of settled authority:

"That where suit is brought against a railroad for injuries to an employee resulting from its negligence, such negligence is an affirmative fact which plaintiff must establish. * * * In proceedings brought under the federal Employers' Liability Act rights and obligations depend upon it and applicable principles of common law as interpreted and applied in federal courts; and negligence is essential to recovery." New Orleans & N. E. R. R. Co. v. Harris, 247 U. S. 367, 371, 38 Sup. Ct. 535, 536, 62 L. Ed. 1167.

In ascertaining the law upon the subject-matter under discussion, as laid down in the federal courts, it should be said, preliminarily, that expressions in cases must usually be examined in connection with the facts.

In Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the action was brought by a locomotive fireman against the railroad company for injuries sustained by the turning of the engine step as he placed his foot upon it. It appeared from the evidence that the defective condition of the step might have been due to "any one of half a dozen things * * * for some of which the employer is responsible and for some of which he is not." In these circumstances, Brewer, J., stated that, while in the case of a passenger, the fact of an accident carried with it a presumption of negligence on the part of the carrier, yet a different rule obtained as to an employee. He then stated that—

"The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence."

This was not, in any sense, a declaration that the maxim or rule of res ipsa loquitur, when correctly understood, was not applicable to cases between master and servant. If, in the case at bar, it had been shown that the boom was injured by some external contact due to the act of some one other than the employer or by some act of Peluso, then the mere fact of the break of the boom might not have been sufficient, and it would have been incumbent upon plaintiff to show that the defective condition of the boom was due to some act or failure to act, on the part of the employer which would exclude the conclusion that the break was due to some act either of Peluso or of some other person or to some other cause.

In Looney v. Metropolitan Railroad Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564, the evidence left open the question as to whether the accident happened because of the leak in the insulation of an electric wire, in which event the master was liable, or because decedent had touched the uninsulated ends of the wire, in which event the master was not liable.

The meaning of the Patton and Looney Cases is significantly explained in Minn. & St. Louis R. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995. That case, it is true, was brought under the Safety Appliance Act; but in discussing res ipsa loquitur, Mr. Chief Justice White said:

"The jury, under an instruction of the court, was permitted to infer negligence on the part of the company from the fact that the coupler failed to per-

form its function, there being no other proof of negligence. It is insisted this was error, since as there was no other evidence of negligence on the part of the company the instruction of the court was erroneous as from whatever point of view looked at it was but an application of the principle designated as res ipsa loquitur, a doctrine the unsoundness of which, it is said, plainly results from the decisions in Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, and Looney v. Metropolitan R. R. Co., 200 U. S. 480. We think the contention is without merit because, conceding in fullest measure the correctness of the ruling announced in the cases relied upon to the effect that negligence may not be inferred from the mere happening of an accident *except under the most exceptional circumstances*, we are of opinion such principle is here not controlling in view of the positive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars." (Italics ours.)

From the foregoing we think it is quite clear that the Supreme Court has left unimpaired the doctrine of res ipsa loquitur as between employer and employee where the circumstances are such as to warrant the application of that doctrine in the sense of the definition in the Francey and other cases cited supra.

In Payne v. Bucher (C. C. A.) 270 Fed. 38, so far as we can gather from the opinion, the court gave the case to the jury on the one issue of negligence as to whether the defendant through his servant had so carelessly adjusted hooks to a bucket that they slipped off and brought about the accident resulting in Bucher's death, whereas there was no evidence that defendant's servant carelessly fixed the hooks, and, presumably, the court had failed to charge res ipsa loquitur correctly and had confined the jury to a consideration of an act of defendant in respect of which there was no evidence.

We shall not prolong this opinion by discussion of the facts in Norfolk & W. Ry. Co. v. Reed, 167 Fed. 16, 92 C. C. A. 478 (Fourth Circuit); Mexican Cent. Ry. Co. v. Townsend, 114 Fed. 737, 52 C. C. A. 369 (Fifth Circuit); Illinois Cent. Ry. Co. v. Coughlin, 132 Fed. 801, 65 C. C. A. 101, and Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677 (Sixth Circuit); Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201 (Seventh Circuit); Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed. 593, 67 C. C. A. 421, and Northern Pacific Ry. Co. v. Dixon, 139 Fed. 737, 71 C. C. A. 555 (Eighth Circuit); Mountain Copper Co. v. Van Buren, 123 Fed. 61, 59 C. C. A. 279 (Ninth Circuit).

It may be noted, however, that in Byers v. Carnegie Steel Co., 159 Fed. 347, 351, 86 C. C. A. 347, 351 (16 L. R. A. [N. S.] 214), Judge Knappen in discussing, among other cases, Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677, stated what we regard as the rule, when he said:

"But there is no hard and fast rule that the doctrine of res ipsa loquitur can in no case be applicable in a suit by an employee against an employer for negligent injuries. On the contrary, the rule referred to has been applied in numerous cases of that nature, the applicability of the rule being determined by the circumstances under which the accident is shown to have happened."

[2] If some of the cases decided by the various Circuit Courts of Appeals, supra, cannot be successfully explained upon the ground that the facts did not justify the application of res ipsa loquitur, and if, in the view of some of these opinions, it would be held that the doctrine is inapplicable to the case now at bar, we may frankly state affirmatively

that we hold that this doctrine is applicable to cases between master and servant, including, of course, employer and employee under the federal Employers' Liability Act.

[3] Since the Patton Case, the marked trend of legislation has been to afford greater protection to the employee; and the courts, while endeavoring to do justice as between employer and employee, have recognized the practical difficulties which arise in a case of injury or death because of defective appliances or equipment where there is no other explanation of the occurrence. Of this practical difficulty, the case at bar is a perfect illustration. The plaintiff, in such circumstances, has either no means or no adequate means of ascertaining either what led to the unusual defect of the appliance or equipment or as to what inspection was made or what care, if any, was used on the part of the employer.

And when there is an occurrence with attendant circumstances, such as in this testimony, a plaintiff has a cause of action.

It follows that the court below did not err in refusing to grant the motion for a directed verdict in favor of defendant.

[4] Defendant submitted to the court two requests to charge in respect of res ipsa loquitur. These requests accurately stated the law, but the court declined to charge as requested upon tthe ground that he had covered the subject-matter in his colloquial charge. We have carefully examined the charge and are of opinion that the substance of the requests was covered by it and that the jury was not misled.

As said in Green v. U. S., 240 Fed. 949, 951, 153 C. C. A. 635, 637:

"The fundamental inquiry in such cases must be—was the law applicable to the controversy fairly presented to the jury; if so, neither party has a right to complain because the trial judge preferred his own language to that of counsel."

We do not find any occasion to comment on any other points raised. Judgment affirmed.