## THE ROBIN GRAY.

## NELSON v. ROBIN LINE S. S. CO., Inc.

### No. 5994.

Circuit Court of Appeals, Ninth Circuit.
March 31, 1930.

Rehearing Denied April 7, 1930.

Lord & Moulton and Wm. P. Lord, all of Portland, Or., for appellant.

Erskine Wood and Wood, Montague & Matthiessen, all of Portland, Or., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

Appellant, while employed by the Long View Stevedoring Company which was engaged in loading the Robin Gray owned by the Robin Line Steamship Company, was injured by being struck by a heavy timber which was being taken aboard. He filed this libel against the Robin Gray to recover damages for the injuries thus received. The accident occurred on February 2, 1928, at 10 p. m. Libelant attributes his injury to a defective winch which was being used in

loading timber. The timber which struck the appellant was about 40 feet long and 12″ by 12″. A sling was put around the timber about 15 feet from one end. The timber was swung aboard by two lines operating from the ends of two swinging booms. Each line was attached to the sling, passed through blocks at the upper and lower end of a boom and thence around a winch. These two winches were operated by the same winchman who stood with his back to the winches as he brought the timber aboard and lowered it into the hold. He operated the throttle of one winch with his right hand and the other with his left hand. The timber in question had been lowered into the 'tween decks hold, and landed upon a block lying on the deck. In order to unhook the sling, a signal was made to the winchman to give slack. According to the testimony of the winchman, and one other witness who saw the operation, he replied to the signal by moving the throttle lever downward, letting the steam into the winch so as to slack off. Instead of responding as it should, the winch lifted the end of the timber between four and five feet and it swung outboard knocking down one of the workmen. Seeing the workman prostrate beneath the timber, the winchman, in order to take it off him as quickly as possible, stopped the starboard winch and opened the throttle of the port winch, swinging the end of the timber away from the prostrate man, but, in doing so, knocked down three other laborers, including the libelant who was struck in the back of the neck by it and seriously injured. The starboard winch, which caused the accident, had a cracked or broken drum which had been repaired by three or four spikes or bolts through the flanges extending along the outer surface of the drum its full width and bolted at both ends on the outer surfaces of the flange. The winch was operated for about three quarters of an hour after the accident, and next morning it was discovered that one of these bolts was broken in two. The result of using the steel cable upon this drum, the evidence shows, would tend to cause kinking of the cable. A certain amount of kinking in such operations is always to be expected; but in this instance there was a great deal more than usual, seriously interfering with the work. If we assume that the winchman operated the throttle in the proper direction as he testified that he did, and in this he was corroborated, it would follow that the drum of the winch was turned in the right direction

to lower the timber, and the only theory upon which the accident could be accounted for is that the cable caught on the drum in some way so that, as it revolved under steam power, it began to rewind upon the drum in the reverse direction. The winchman, who had had over twenty years experience as such, offers as his explanation for the action of the cable that it caught under the bolt which was found to have been broken and thus, instead of unwinding, began to rewind; or that it may have been thus caught because a kink in the cable looped over the end of the broken bolt as it unwound and thus began to rewind, or that a kink in the cable already on the drum may have caught the cable sufficiently to cause it to rewind on the drum. No one saw or was able to state just what happened to the cable at the time of the accident. The winch driver's back was toward the drum and he was engaged in an effort to meet the emergency which had suddenly developed by the unexpected operation of the winch. In this dilemma, the trial court was of the opinion that the libelant had not sustained the burden of proof which required him to not only show that the winch was defective, but that the accident was caused by the defect. We have four definite and undisputed facts relating to the accident. First, that the winch was cracked and the temporary repairs were such as to cause the rope to kink; second, that the rope did in fact kink; third, that the bolt was found to be broken after the winch had been operated only three-quarters of an hour after the accident; fourth, that the winch was so constructed that when the throttle was open by a downward movement the cable would move in that direction. Consequently, it must be concluded that if the throttle and the drum of the winch moved in the proper direction as the evidence shows they did, and the cable moved in the wrong direction as it did, the only way to account for that phenomenon is that the cable caught somewhere on the surface of the drum so that it began to wind on the drum in the reverse direction. In fact, there is only one other way to account for the accident, that is that the winchman moved the lever in the wrong direction, and the evidence is to the contrary. The only possible way in which the cable could catch in the drum would be in the manner suggested by the winchman. A difficulty arises here, however, for this reason, the kinking of the rope was reasonably to be anticipated from the nature of the repairs made to the winch, but the breaking of the bolts was not

a necessary result. A taut cable carrying a heavy load passing over the uneven surface, which the drum presented with these bolts on its surface, would have a tendency to kink, and, as the evidence shows, did kink. For this result the respondent would be clearly liable, and, if it could be shown that the injury resulted from the kinking, the liability of the respondent would be clear. On the other hand, if the injury resulted solely from this cable catching on a broken bolt without kinking, it cannot be said that the respondent is liable for that result unless it was reasonably to be anticipated from the character of the temporary repairs to the drum. These bolts were from one-half to three-quarters of an inch in diameter, and there is no direct evidence that there was reason to anticipate that they would be broken by the pressure to which they would be subjected by the operation of the winch. If both the kinking of the cable and the breaking of the bolt concurred in causing the accident, and the kinking was the result of negligence, the appellee would be liable for such negligence even if the breaking of the bolt was not reasonably to be anticipated. 45 C. J. p. 920, § 485, et seq., and numerous cases there cited. However, the evidence does clearly establish that the injury resulted from the use of a winch known to be defective, and, in the absence of positive testimony that the injury was wholly caused by some other and undisclosed defect such as a defective bolt which could not have been discovered by the shipowners by reasonable diligence, the preponderance of the whole evidence sustains the allegation that the shipowner was negligent in furnishing such a winch for the use of the stevedores. This view is, we believe, sustained by the authorities. See Central R. Co. v. Peluso (C. C. A.) 286 F. 661; Pleckaitis v. Henrik Ostervolze Docking Co. et al. (C. C. A.) 294 F. 824, 826; The Haraldshaug (Alne v. Robinson) 20 F.(2d) 337 (C. C. A.), citing Pleckaitis v. Henrik Ostervolze Docking Co., supra; also Southern Ry.-Carolina Division v. Bennett, 233 U. S. 80, 34 S. Ct. 566, 58 L. Ed. 860.

Decree reversed with instructions to the trial court to fix the damages suffered by appellant and libelant from the testimony already adduced; and such supplementary evidence as the trial judge permits or requires.

RUDKIN, Circuit Judge, sat in the hearing of this case, but does not participate in the decision.