IDA COTT, as Administratrix of the Estate of MARTIN COTT, Deceased, Respondent, *v.* ERIE RAILROAD COMPANY, as Lessee of the BUFFALO CREEK RAILROAD COMPANY, et al., Appellants.

Negligence — railroads — Federal Employers' Liability Act — when conductor of switching crew killed on terminal tracks on returning from transferring cars to another railroad for foreign shipment is engaged in interstate commerce — preliminary movement a part of foreign commerce — lack of knowledge of destination no defense — federal statute does not touch liability of other parties to wrong — when railroads maintaining terminal presumptively responsible for condition of switch — fellow-servants.

1. The defendant railroads maintain and jointly operate a terminal road and switching yard. Plaintiff's intestate, a conductor of a switching crew in the employ of defendant Lehigh Valley Railroad Company, was killed by reason of the derailment of his engine while it was moving along the terminal tracks. He had been engaged in

transferring three Lehigh Valley cars, in course of transit from Buffalo to Montreal, to the New York Central tracks. It was not shown that the Lehigh Valley had been notified in advance of the point of ultimate destination, but it knew that its cars were to be surrendered to another carrier, to be hauled to any point which that carrier might name. *Held*, that the intestate was engaged in foreign commerce when his engine was derailed.

2. A contention that the preliminary movement, if part of a larger movement and thus part of foreign commerce as between shipper and consignee, is to be considered by itself and thus viewed as merely local in determining the relation between shipper and carrier, or between carrier and servant, cannot be upheld. It shares, in these relations also, the character and quality of the movement that succeeds it. A terminal road, which switches indiscriminately for foreign and domestic cars, is itself an instrumentality of interstate or foreign commerce.

3. Lack of knowledge, on the part of a railroad which interchanges or switches cars, of their interstate character constitutes no limitation upon the rights of injured workmen under the Federal Employers' Liability Law. The only knowledge to be proved is knowledge that the facilities of the terminal are to be utilized indiscr‍minately by foreign and domestic cars in foreign and domestic commerce. (*Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas*, 204 U. S. 403, distinguished.)

4. The federal statute in giving a remedy against the employer does not cut off nor prohibit a remedy against another. The statutory remedy, in so far as it fixes the liability of the employer, is exclusive as to him. It does not touch the liability of other parties to the wrong.

5. No error can be found in the charge that the defendants " are presumptively responsible for the condition of the switch unless it affirmatively appears to the contrary." The switch was in their joint control. The settled practice of the terminal required it to be closed unless presently in use. By some one's blunder it was left open without light or other warning. The situation charged the defendants with a duty to explain.

6. A suggestion that the duty does not arise where the act to be explained is the act of fellow-servants cannot be sustained. Employees of the Erie were not fellow-servants, for the Erie was not the master. Employees of the Lehigh Valley, if fellow-servants, might still involve their master in liability for negligence, for the fellow-servant rule has been abolished in cases subject to the federal statute.

*Cott* v. *Erie R. R. Co.*, 189 App. Div. 571, affirmed.

(Argued March 18, 1921; decided April 19, 1921.)

1921.]          Opinion, per Cardozo, J.          [231 N.Y. 67]

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 17, 1919, affirming a judgment in favor of plaintiff entered upon a verdict.

*John W. Ryan* for Erie Railroad Company, appellant. Plaintiff's sole remedy is the Federal Employers' Liability Act. (*Taylor* v. *Taylor*, 232 U. S. 363; *Winfield* v. *New York Central R. R. Co.*, 244 U. S. 147; *Erie R. R. Co.* v. *Winfield*, 244 U. S. 170; *N. Y. C. R. R. Co.* v. *Tonsellito*, 244 U. S. 360; *Shanahan* v. *Monarch Engineering Co.*, 219 N. Y. 469.) Recovery cannot be had in a single action against the Lehigh under the federal statute and against the Erie under the common law. (Code Civ. Pro. § 484.)

*Lyman M. Bass* for Lehigh Valley Railroad Company, appellant. The trial court erred in holding as a matter of law over the objection and exception of the defendant Lehigh Valley Railroad Company that the decedent at the time of his death was engaged in interstate commerce. (*G., C. & S. F. Ry. Co.* v. *Texas*, 204 U. S. 403.)

*Hamilton Ward* for respondent. The remedy against the Lehigh does not exclude the common-law liability of the Erie. (*Lester* v. *Otis Elevator Co.*, 169 App. Div. 613.) At the time of the accident the plaintiff and defendant were engaged in interstate commerce. (*Carr* v. *N. Y. C. R. R. Co.*, 238 U. S. 260; Dougherty on Employers' Liability, 74, 75; *Illinois Central R. Co.* v. *Porter*, 207 Fed. Rep. 311; *St. Jos. & G. I. Ry. Co.* v. *U. S.*, 232 Fed. Rep. 349; Roberts on Interstate Carriers [2d ed.], ch. 7, §§ 114, 115; *Lindstrom* v. *N. Y. C. R. R. Co.*, 186 App. Div. 429; *Knowles* v. *N. Y., N. H. & H. R. R. Co.*, 223 N. Y. 513; *Winfield Case*, 244 U. S. 170; *P. C. C. & St. L. R. Co.* v. *Glynn*, 219 Fed. Rep. 148; *Erie R. Co.* v. *Downs*, 250 Fed. Rep. 415.)

CARDOZO, J. The action is for personal injuries resulting in death.

The Erie and the Lehigh Valley railroads maintain and jointly operate at Buffalo a terminal road and switching yard known as the Buffalo Creek. Its function is the interchange of cars between the railroads that enter Buffalo, and between such roads and neighboring plants. Plaintiff's intestate, Cott, was a conductor in the service of the Lehigh Valley. His engine, while moving along the terminal tracks, was derailed by an open switch, and he was thrown to the ground and killed. This action is brought by his administratrix against the Lehigh Valley and the Erie railroad companies. The Lehigh Valley was the employer. It is sued under the Federal Employers' Liability Law, upon the claim that the movement of the engine was in interstate or foreign commerce. The Erie, though not the employer, was a joint operator of the terminal. It is sued at common law for breach of duty toward one who was there at its invitation, in the business of the common enterprise.

(1) We find no error in the ruling, complained of by the Lehigh Valley, but accepted by the Erie, that Cott was in foreign commerce when his engine was derailed.

Three carloads of beef were in course of transit from Buffalo to Montreal, and thence to England. The beef, until placed upon the cars, had been stored by its owner, the Jacob Dold Packing Company, with the Buffalo Cold Storage Company, whose plant connected with the terminal. The owner telephoned instructions to the storage company to ship the beef for export, stating the route and destination. The storage company, upon receipt of these instructions, attended to the shipment. The beef was loaded upon Lehigh Valley cars, transported along the terminal tracks, and delivered to the New York Central, which carried it in the same cars to Montreal. The Lehigh Valley is not shown to have been notified, in advance, of the point of ultimate destination, but it knew that its cars were to be surrendered to another carrier, to be hauled to any point which that carrier

might name. Upon receipt of the beef, it delivered to the shipper a document known as an " interline switching waybill," a waybill, in other words, that called for switching between lines. This document named the Buffalo Cold Storage Company as the shipper; the agent of the New York Central railroad as the consignee; and the destination as " East Buffalo, New York Central Railroad, via Buffalo Creek." The charge (described as a switching charge) was fixed at $7.60. The New York Central, on the arrival of the cars, paid or assumed this charge, collecting later from its own customer, and issued its own bills of lading in the name of the Jacob Dold Packing Company as consignor, the destination being stated as Montreal, and an indorsement giving notice that the shipments were for export.

We think the movement in foreign commerce was single and continuous (*Louisiana R. R. Comm.* v. *Texas & Pac. Ry. Co.*, 229 U. S. 336; *Texas & N. O. R. R. Co.* v. *Sabine Tram Co.*, 227 U. S. 111). One exercise of will, a purpose preconceived and preannounced, determined the course of shipment from the beginning to the close. The switching at the terminal was not an end in itself. In origin and execution, it was a step in a larger process (*Phila. & R. Ry. Co.* v. *Hancock*, 253 U. S. 284). In such circumstances, the character of the transaction is not determined by the multitude of bills of lading or other documents of title ( *U. S.* v. *Union Stockyards*, 226 U. S. 286; *Louisiana R. R. Comm.* v. *Texas & Pac. Ry. Co.; Texas & N. O. R. R. Co.* v. *Sabine Tram Co., supra*). Its character is determined by continuity of movement combined with unity of plan. Thus viewed, the switching at the terminal was not a finality, but an incident. The cause that Cott was serving when he died was the cause of foreign commerce (*Phila. & R. Ry. Co.* v. *Hancock, supra*).

We are told that the preliminary movement, if part of a larger movement and thus part of foreign commerce as

between shipper and consignee, is to be considered by itself and 'thus viewed as merely local in determining the relation between shipper and carrier, or between carrier and servant. We think it shares, in these relations also, the character and quality of the movement that succeeds it. A terminal road, which switches indiscriminately for foreign and domestic cars, is itself an instrumentality of interstate or foreign commerce (*U. S.* v. *Brooklyn Eastern Dist. Terminal,* 249 U. S. 296, 304, 305; *U. S.* v. *Atlanta Terminal Co.,* 260 Fed. Rep. 779; certiorari denied, 251 U. S. 559; *U. S.* v. *Union Stockyards,* 226 U. S. 286, 304, 306). It is subject at all times to the Safety Appliance Act of Congress (*U. S.* v. *Atlanta Terminal Co., supra; U. S.* v. *Northern Pac. Ry. Co.,* 254 U. S. 251; 41 Sup. Ct. Rep. 101, Dec. 6, 1920), and to the act to regulate the hours of service (*U. S.* v. *Brooklyn Eastern Dist. Terminal, supra*). Those acts must be obeyed by interstate carriers even in intrastate transactions (*Ward* v. *Erie R. R. Co.,* 230 N. Y. 230, 232; *Texas & P. Ry. Co.* v. *Rigsby,* 241 U. S. 33). It is subject in addition to the Employers' Liability Act of Congress (35 Stat. at Large, 65) when its employees do the things from 'which it gets its interstate or foreign character, *i. e.,* when they are switching or interchanging interstate or foreign cars (*Erie R. R. Co.* v. *Collins,* 253 U. S. 77; *Erie R. R. Co.* v. *Szary,* .253 U. S. 86; *Ill. Cent. R. R. Co.* v. *Behrens,* 233 U. S. 473). To this limitation, the defendant would add another. Not only, it says, must the cars be interstate or foreign; the road which interchanges or switches them must in each instance know them to be such. The fact is not enough unless accompanied by knowledge. Neither in statute nor in decision do we find this limitation upon the rights of injured workmen (Federal Employers' Liability Law, 35 Stat. at Large, ·65, sec. 1). The only knowledge to be proved is knowledge that the facilities of the terminal are to be utilized indiscriminately by foreign and domestic cars in foreign and domestic

commerce ( *U. S.* v. *Brooklyn Eastern Dist. Terminal; U. S.* v. *Atlanta Terminal Co.; Erie R. R. Co.* v. *Collins, supra*). Consent, with such knowledge, to interchange and switch without inquiry, is consent to participate in commerce of one order or the other as one or the other is in fact promoted by the movement. The business varies in the instance with the cause which it advances (*Erie R. R. Co.* v. *Collins; Erie R. R. Co.* v. *Szary, supra; N. Y. C. & H. R. R. R. Co.* v. *Carr,* 238 U. S. 260; *Smith* v. *Payne,* 269 Fed. Rep. 1; *Roush* v. *B. & O. R. R. Co.,* 243 Fed. Rep. 712).

We have said that the employer had notice from the very function of the terminal that foreign and local carriers, indiscriminately, would make use of its facilities. Confusion of thought is inevitable if service which is incidental, like interchange or switching, is viewed as one with service which is intended to be ultimate. This is not a case like *Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas* (204 U. S. 403) where transportation, in fact preliminary, was reasonably understood by the carrier to be complete and independent. The narrow bounds of that decision are indicated in later judgments (*Ohio R. R. Comm.* v. *Worthington,* 225 U. S. 101, 109; *So. Pac. Terminal Co.* v. *Interstate Commerce Comm.,* 219 U. S. 498; *Texas & N. O. R. R. Co.* v. *Sabine Tram Co., supra; Louisiana R. R. Comm.* v. *Texas & P. R. Co., supra; Bracht* v. *San Antonio & A. P. Ry.,* 254 U. S. 489; 41 S. C. Rep. 150). This is a case where the service was known from the beginning to be a step or link or incident in a movement that was to follow. The cars were switched between lines with the understanding and expectation that they would go forward on their journey. The service was in aid of foreign or domestic commerce as the event might fix its nature.

Precedents will be misleading if separated from the statutes they interpret. Opinions get their color and significance from the subject of the controversy. There

is no attempt to charge this carrier under the Bill of Lading Act (Act of March 4, 1915, ch. 176, and August 9, 1916, ch. 301; Compiled Statutes, 8604a) for lost or damaged shipments upon some theory that by issuing a switching waybill it became responsible throughout the transit (*Pere Marquette Ry. Co.* v. *J. F. French & Co.*, 254 U. S. 538; 41 S. C. Rep. 195, 197, Jan. 17, 1921). We do not say that terminal service is carriage or transportation within the meaning of that statute (*Pere Marquette Ry. Co.* v. *J. F. French Co.*, *supra*). There is no attempt to charge the carrier with penalties for the exaction of excessive rates or the concession of illicit privileges (*Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas, supra; Bracht* v. *San Antonio & A. P. Ry.*, 254 U. S. 489; 41 S. C. Rep. 150). We do not say that the purpose of the shipper is sufficient in such circumstances, unless shared by the carrier, to fix the nature of the shipment. What we are to determine now is the meaning of a statute which assures a remedy for negligence to every employee of interstate or foreign carriers when injury is suffered in the promotion of interstate or foreign business. This employer undertook to do business of that order indifferently and indiscriminately with business that was local. It became by its own choice an interstate or foreign carrier (*U. S.* v. *Atlanta Terminal Co., supra*, and cases there cited). Its employee met his death while aiding an interstate or foreign movement. The personal representative has the benefit of the statutory remedy.

(2) The appeal brings up other questions less intricate and doubtful.

a. The Erie contends that the effect of the federal statute in giving a remedy against the employer is to cut off and prohibit a remedy against any one else. We find no trace of such a purpose. The statutory remedy, in so far as it fixes the liability of the employer, is, indeed, exclusive as to him (*Taylor* v. *Taylor*, 232 U. S. 363; *N. Y. Central & H. R. R. R. Co.* v. *Tonsellito,*

244 U. S. 360). It does not touch the liability of other parties to the wrong (*Lee* v. *Central Georgia Ry. Co.*, 252 U. S. 109, 110). "The Federal Employers' Liability Act does not modify in any respect rights of employees against one another existing at common law" (*Lee* v. *Central Georgia Ry. Co.*, *supra*). We are warned of possible complications in the apportionment of damages. Those are problems of the future. The record does not suggest them.

b. We find no error in the charge that the defendants "are presumptively responsible for the condition of the switch unless it affirmatively appears to the contrary."

The switch was in their joint control. The settled practice of the terminal required it to be closed unless presently in use. By some one's blunder it was left open without light or other warning. The situation charged the defendants with a duty to explain (*Van Inwegen* v. *Erie R. R. Co.*, 126 App. Div. 297; 194 N. Y. 534; *Marceau* v. *Rutland R. R. Co.*, 211 N. Y. 203, 209). There is some suggestion that the duty does not arise where the act to be explained is the act of fellow-servants. Employees of the Erie were not fellow-servants, for the Erie was not the master. Employees of the Lehigh Valley, if fellow-servants, might still involve their master in liability for negligence, for the fellow-servant rule has been abolished in cases subject to the federal statute (*Central Vermont Ry. Co.* v. *White*, 238 U. S. 507; *Southern Ry. Co.* v. *Derr*, 240 Fed. Rep. 75).

c. Other rulings complained of have been considered, but no error has been found in them.

The judgments should be affirmed with costs.

ANDREWS, J. (dissenting). I dissent from so much of the prevailing opinion as refers to the Lehigh Valley Railroad Company.

It is true that a terminal road that switches indiscriminately foreign and domestic cars is itself an instrument of interstate commerce; it is true that its acts

in so far as they do or may affect interstate commerce are subject to regulations by Congress; it is true that when actually engaged in interstate commerce its employees are protected by federal legislation. This is far from requiring the conclusion that each movement of freight over its road is also a movement in interstate commerce.

Whether it is so or not depends upon the circumstances of each particular shipment. If, in fact, it is interstate, then knowledge or notice on the part of the carrier is immaterial. But if that fact is in dispute, what the carrier knew or should have known when the contract of carriage was made may become important.

I accept the tests proposed as to whether the particular shipment with which we have to do was inter- or intrastate. Was the movement from the cold storage warehouse to Montreal single and continuous; did one exercise of will, a purpose preconceived and preannounced, determine the course of shipment from the beginning to the close; was the delivery to the agent of the New York Central Railroad Company an end in itself or merely a step in a larger process; was there continuity of movement, combined with unity of plan; in reality was the switching of the cars but one part of an entire interstate movement, reasonably to be anticipated by the parties, a recognized step to a destination outside the state? Undoubtedly, if these questions are answered in favor of the plaintiff then nothing more is to be said. But can they be so answered under the circumstances before us as a matter of law?

When the Lehigh Valley Railroad Company received an order from the Buffalo Cold Storage Company to move those cars to East Buffalo and deliver them to the New York Central Railroad Company's agent and proceeded to carry out this order, it may or it may not have been engaged in interstate commerce. What later actually happened to these cars; what was the secret intention of the owner of their contents is not decisive.

The real question is, did the parties who initiated the movement initiate it as a step in a larger process, or did they intend it to be an end in itself, something separate and distinct from later movements which might be begun when delivery was made to the consignee. As to this, I think, the relations between shipper and carrier, what each knew or reasonably should have anticipated, and the contract between them as interpreted in the light of these circumstances, are the matters for consideration. (*Gulf, Col. & S. F. Ry. Co.* v. *Texas*, 204 U. S. 403; *Bracht* v. *San Antonio & A. P. Ry.*, 254 U. S. 489.)

In its switching work, the Lehigh did engage in interstate commerce. The New York Central was an interstate road. Cars delivered to it were often carried over the state line. All this was known. On the other hand, the cold storage company was obviously acting for some undisclosed principal; the consignee was not engaged in commerce of any kind; if the cars were to be forwarded from East Buffalo a new contract would be required between the shipper and the New York Central Company; the switching charges were not part of a through transportation rate, they were a distinct charge for a distinct service; of a like character was the contract of the Lehigh; and the Lehigh was ignorant of the truth.

I do not say that these facts should require us to hold as a matter of law that this shipment was intrastate. All we need hold is that whether this particular transaction was or was not a final and distinct piece of work depends upon the intention of the parties when the shipment was made. If they chose they might make it so. Whether they did or not is a question of fact. The judgment against this defendant should, therefore, be reversed and a new trial should be ordered.

CHASE, HOGAN and CRANE, JJ., concur with CARDOZO, J.; HISCOCK, Ch. J., and McLAUGHLIN, J., concur with ANDREWS, J.

Judgments affirmed.