EDNA LA LONE, Administratrix of Estate of MAURICE LA LONE, Appellant, v. ST. LOUIS MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY.—293 S. W. 379.

Division One, February 16, 1927.

**1. PRACTICE: Demurrer to Evidence: Interstate Commerce.** In passing on a demurrer to evidence offered by plaintiff to show that her deceased husband was engaged in interstate commerce at the time of his injuries, the court is required to make every inference in her favor which the jury, with any degree of propriety, might infer.

**2. INTERSTATE COMMERCE: Assembling Empty Cars at Freight House.** A switchman may be engaged in interstate commerce who is assisting in the movement of a train of empty railroad cars to a freight house, where some of them are to be loaded with interstate freight. The movement, by defendant terminal railroad company, engaged in both interstate and intrastate commerce, of empty cars from the yard of another interstate railroad to its freight house, to be there loaded immediately for shipment into other states, is interstate commerce, and is a preparatory movement in aid of and a necessary incident in furtherance of the interstate movement and so closely connected with it as to be a part of it; and if in the same train with those interstate cars are assembled at the same yard other empty cars designated to be loaded at the same freight house with intrastate freight, a switchman, who is negligently injured while the train is being run from the yard to the freight house, is engaged in interstate commerce under the Federal Employers' Liability Act, since the work of moving those empty cars which are to be loaded with intrastate freight is not being done independently of the interstate commerce in which defendant is engaged, but is so directly and immediately connected with the movement of the cars to be loaded with interstate freight as to be a part of the interstate movement.

**3. ——: ——: Proof That Part of Train is Interstate.** Proof that the employees of the interstate railroad knew that eleven of the thirty-four empty cars of the train, which the defendant terminal railroad undertook to move from the car yards to the freight house, would be immediately spotted at certain sections of the freight house set apart for designated interstate shipment, and would there be loaded with interstate freight and moved to designated points in other states; and further proof that at least four of them were so spotted, there loaded on the next day and shipped to the designated points in other states, is sufficient proof that the entire train, during its movement from the yard to the freight house, was in interstate commerce, in an action, under the Federal Employers' Liability Act, for the recovery of damages for the death of a switchman who was negligently injured while assisting in the movement of the train.

4. **Proof that Part of Train is Interstate: Knowledge of Employee.** It is not necessary that an employee engaged in making up a train of empty cars know the interstate character of the movement.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2708, p. 764, n. 80.    **Commerce,** 12 C. J., Section 53, p. 44, n. 16 New.    **Master and Servant,** 39 C. J., Section 1306, p. 1111, n. 43.

Appeal from Circuit Court of City of St. Louis.—*Hon. Henry A. Hamilton,* Judge.

REVERSED AND REMANDED (*with directions*).

*Charles P. Noell* and *Glen Mohler* for appellant; *James T. Blair* of counsel.

(1) This court has prescribed the test to be applied in determining whether there was substantial evidence supporting the verdict. Buesching v. Gaslight Co., 73 Mo. 231; State ex rel. v. Sturgis, 276 Mo. 571; Sexton v. Sexton, 295 Mo. 143. (2) Respondent was admittedly engaged in handling interstate and intrastate cars and was an instrumentality of interstate commerce. Spaw v. Term. Ry. Co., 198 Mo. App. 556; Cott v. Erie Railroad Co., 231 N. Y. 67, 257 U. S. 636; United States v. Atlanta Term. Co., 260 Fed. 779, 251 U. S. 559; Brewer v. Mo. Pac. Ry. Co., 259 S. W. 826. (3) The movement was in interstate commerce. The test is: "Was the work being done independently of the interstate commerce in which the company was" (admittedly) "engaged or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned or was it in the nature of a duty resting on the carrier?" Kinzell v. Ry. Co., 250 U. S. 133; Southern Pac. Co. v. Indust. Acc. Comm., 251 U. S. 263; C. B. & Q. Railroad Co. v. Harrington, 241 U. S. 180. "It is also settled that the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the act." Kinzell v. Ry. Co., 250 U. S. 133. (4) Evidence showing the switching and placing of freight cars pursuant to daily routine to the end and purpose that they may be presently loaded and then, according to regular system, moved forward in interstate commerce, followed by such loading and movement, is ample to take to the jury the question whether those engaged in the operations are engaged in interstate commerce. Christy v. Wabash, 195 Mo. App. 236, 246 U. S. 656; Aldread v. Northern Pac. Railroad, 93 Wash. 210; Breske v. Railroad Co., 115 Minn. 386; Mulstay v. Des Moines Union Ry. Co., 195 Iowa, 514; Hester v. Railroad Co., 254 Fed. 798; Davis v. Dowling,

284 Fed. 670; Penn. Railroad Co. v. Morrison, 3 Fed. (2nd) 986; White v. Jackson, 221 Ill. App. 129, 257 U. S. 659; Jeneary v. Traction Co., 306 Ill. 392; Chicago Junc. Ry. Co. v. Indus. Bd., 277 Ill. 515.

*J. L. Howell* and *R. E. Blodgett* for respondent.

The court's action in sustaining defendant's motion for a new trial on the ground that the court had erred in refusing to direct a verdict for the defendant at the close of the plaintiff's case and again at the close of the entire case was proper, because it appeared affirmatively from testimony on behalf of plaintiff that he was at the time of the particular movement of cars not engaged in interstate commerce, and therefore could not recover under the Federal Employers' Liability Act. Illinois Central v. Behrens, 233 U. S. 473; Erie Railroad Co. v. Welsh, 242 U. S. 303; Lehigh Valley Railroad Co. v. Barlow, 244 U. S. 183; C. B. & Q. Railroad Co. v. Harrington, 241 U. S. 177; Mondou v. Railroad, 223 U. S. 1; Pedersen v. Del. Railroad Co., 229 U. S. 146; N. Y. C. & H. R. Railroad Co. v. Carr, 238 U. S. 260; United States v. N. Y. C. & H. R. Railroad Co., 205 Fed. 428.

ATWOOD, J.—This is an action brought under the Federal Employers' Liability Act wherein the jury returned a verdict for $22,500 damages to plaintiff for the death of her husband, Maurice La Lone, who while in defendant's employ as a switchman was fatally injured about 9:40 at night, September 13, 1921, in the movement of a train of thirty-four empty cars from the Frisco Twenty-third Street yard to the Frisco Broadway freight house, both in St. Louis, Missouri. Defendant filed motion for a new trial, which the trial court sustained, stating that it did so "for the reason that the court erred in refusing to give the instruction in the nature of a demurrer offered by defendant at the close of plaintiff's case, and because the court erred in refusing defendant's instruction directing a verdict for defendant at the close of all the evidence."

During the trial defendant admitted that it was a common carrier of both intrastate and interstate commerce at the time the deceased was injured; that at the time of his death the deceased was in the employ of defendant; and that the deceased received injuries at the time and place in question which resulted in his death. La Lone was crushed to death while in the discharge of his duties at the front end of the engine which left the track while moving this train of thirty-four empty cars toward the Broadway freight house. There was substantial evidence tending to show that respondent's negligence caused his death, and opposing counsel agree that the question that moved the court to grant a new trial was as to the sufficiency of the

evidence that La Lone was at the time he was injured engaged in interstate commerce. We shall, therefore, examine only such of the evidence as tends to show that La Lone was then and there engaged in interstate commerce, bearing in mind that in passing upon a demurrer to the evidence, "the court is required to make every inference in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor." [Buesching v. St. Louis Gaslight Co., 73 Mo. l. c. 231; Sexton v. Sexton, 295 Mo. l. c. 143.]

The evidence shows that the Frisco Railroad daily loaded and moved cars of freight, both intrastate and interstate, from the Broadway freight house to its Twenty-third Street yard and thence to their several destinations; that the only way cars could be moved between this freight house and the Twenty-third Street yard was over respondent's track and by means of its crew and equipment; that respondent was employed by the Frisco to move empty cars from the Frisco's Twenty-third Street yard to its Broadway freight house and to move them back when loaded to its Twenty-third Street yard, being paid so much a car for the round trip; that the loading platform at this freight house was divided into sections, and that cars destined for certain principal points outside the State of Missouri, such as Tulsa, Oklahoma, Dallas, Texas, etc., were daily placed or spotted by respondent at the same respective locations or sections, where they were loaded and moved therefrom each day, unless the tonnage was insufficient, in which event the car would be held over at the same section or location until the tonnage would justify its movement to point of destination. One of a number of instances testified to will illustrate the general practice. There was a certain location or section where the Tulsa, Oklahoma, car was regularly spotted, and all merchandise for shipment to Tulsa would come to that section to be loaded, and a loaded car moved from that particular spot or section toward the Tulsa destination each day or as soon as the tonnage would justify its movement.

Respondent's method was to move out the loaded cars from the Broadway freight house to the Twenty-third Street yard during the day, and at night move in the empty cars required for the next day's loading. The foreman of La Lone's crew testified that it was his custom on going from the freight house to the yard with the loaded cars, to take his order covering the number of empty cars he was to bring back, and that about five or five-thirty o'clock in the afternoon of September 13, 1921, he got an order from the yard clerk for the number of empty cars needed that night, and had this order with him when he and his crew took the loaded cars that afternoon from the Broadway freight house to the Twenty-third Street yard. Respondent failed to produce this written order or list at the trial, and

when asked whether "if spotting was to be done it would have been on the list," this foreman said: "At certain times, when they had special orders for them." The yard clerk of the Rock Island-Frisco-Terminal testified that his custom was to leave an order or list on his desk between four-thirty and five o'clock each afternoon in care of the night watchman for respondent's foreman, advising him where the empty cars should be spotted or placed that night, and that his record of the empty cars that were brought up to the Broadway freight house on the night of September 13th showed a total of thirty-four cars delivered, seven of them being refrigerator cars which were specially ordered to be spotted or placed, and were placed at certain designated places, blocks or sections on tracks numbered 4 and 5. This same witness further testified that his record of the loaded cars that subsequently went out shows that of these seven refrigerator cars four were loaded and moved as interstate shipments. One numbered 1362 Frisco moved to Oklahoma City, Oklahoma, on September 14th; and on September 15th another numbered 2362 Frisco to Wichita, Kansas, another numbered 1419 Frisco to Pittsburg, Kansas, and another numbered 2381 Frisco to Oklahoma City, Oklahoma.

The Frisco agent in charge of the Broadway freight house testified that in loading and moving the cars he followed a schedule, that he did not have this schedule for the 13th and 14th of September, 1921, and was unable to find the spotting orders for the night of September 13th, but knew the cars that were loaded on September 14th, and that car 124679 S. F. was loaded and moved to Tulsa, Oklahoma, on that date, and car 17009 S. F. was loaded and moved from track 6 to Dallas, Texas, on the same date. No cars were left or set back on the freight-house tracks when respondent moved the loaded cars out in the afternoon of September 13th.

The Frisco's general agent at its Seventh Street station, who kept records covering the movement of cars between the Broadway freight house and the Twenty-third Street yard, testifying from his records, said that thirty-four empty cars were moved by respondent from the Twenty-third Street yard to the Broadway freight station on the night of September 13, 1921; that car 124679 S. F. and car 17009 S. F. (above designated) were among said number, and on September 14th they were loaded and moved to Tulsa, Oklahoma, and Dallas, Texas, respectively. This witness further testified that of the thirty-four empty cars so delivered at the Broadway freight house on the night of September 13th, certain other cars were loaded and moved to destinations outside the State of Missouri on September 14th, as follows: Car No. 1362 S. F., to Oklahoma City, Oklahoma (by the yard clerk above identified as one of the seven refrigerator cars) ; car No. 1306 S. F., to Wichita, Kansas; car No. 31335 S. F., to Pittsburg,

Kansas; car No. 31476 A. C. L., to Harvard, Arkansas; car No. 15522 K. C. S., to Sapulpa, Oklahoma; car No. 125562 S. F., to Sapulpa, Oklahoma; and that other cars in this lot of thirty-four were loaded and moved to bulk-breaking points in Missouri, and may have contained interstate shipments.

As said in Erie Railroad Company v. Welsh, 242 U. S. 303, l. c. 306-7, the case "turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interstate commerce."

The test applied in Shanks v. Railroad Company, 239 U. S. 556, l. c. 558, was the employee at the time of the injury should be engaged "in interstate transportation or in work so closely related to it as to be practically a part of it;" in Southern Railway Co. v. Puckett, 244 U. S. l. c. 573, that the work was interstate commerce if it constituted "preparatory movements in aid of interstate transportation;" in N. Y. Central Railroad v. Carr, 238 U. S. l. c. 264, that the employee be "engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof;" in Pedersen v. Railroad Company, 229 U. S. 146, l. c. 151, whether the work was being done "independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it," and whether its performance was "a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier;" and in Kinzell v. Railway Company, 250 U. S. 130, l. c. 133, that "the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce." Such were the tests applied to switch movements of empty cars in Trowbridge v. K. C. & W. Belt Ry., 192 Mo. App. l. c. 60; Christy v. Wabash Ry. Co., 195 Mo. App. l. c. 235, writ of error dismissed, 246 U. S. 656; Breske v. Minneapolis & St. L. Railroad Co., 115 Minn. l. c. 390; Aldread v. Northern Pac. Railroad Co., 93 Wash. 209; Jeneary v. C. & I. Traction Co., 306 Ill. l. c. 396; White v. Jackson, 221 Ill. App. l. c. 132; and Hester v. East Tenn. & W. N. C. Railroad Co., 254 Fed. l. c. 789.

Respondent admits that it is a common carrier engaged in both intrastate and interstate commerce, but denies that it was engaged in interstate commerce at the time La Lone was injured. Obviously, respondent was engaged in interstate commerce when it moved cars loaded for destinations outside this State from the Frisco Broadway freight house to its Twenty-third Street yard. Is it not just as plain, and quite within the reasoning of the above cases, that the movement

of these same cars in their empty condition from the Twenty-Third Street yard to the Broadway freight house for the purpose of being immediately loaded thereat with interstate freight and immediately moved therefrom in interstate commerce, was *a preparatory movement in aid of, a necessary incident to, for the purpose of furthering, and so closely connected with* the movement of these same cars when loaded with interstate freight as to be a part of such interstate movement? The movement of these empty cars to the Broadway freight house was a part of the round trip duty resting upon respondent, and on the prompt, faithful and complete performance of which the movement of loaded cars destined for interstate points depended.

The only question that might be considered close in this case is whether or not at the time these empty cars began to move toward the Broadway freight house any of them had been designated for or assigned to interstate use. [1 Roberts on Federal Liabilities of Carriers, sec. 506.] The evidence shows that before the Frisco's agents, servants and employees ordered these thirty-four empty cars from the Twenty-third Street yard they knew that at least eleven of them would be immediately spotted at certain sections designated and set apart for interstate loading, and there loaded and moved to points beyond the State. We may here observe that it is not necessary that the employee know the interstate character of the movement. [Cott v. Erie Railroad Co., 231 N. Y. 67, *certiorari* denied, 257 U. S. 636.] Before respondent's switch foreman began to move these empty cars he had received a written order or list through the office of the yard clerk, which according to the admitted custom and practice contained the spotting orders if any were specially given. Respondent when called upon failed to produce this order or list. The yard clerk who had made it out testified that the refrigerator cars were ordered to be spotted at certain designated places, that they were so placed, and the uncontradicted evidence is that four refrigerator cars, which were included in this train of thirty-four empty cars, were loaded and moved from these specially designated locations on September 14th and 15th to points beyond this State, such as Oklahoma City, Oklahoma, Wichita, Kansas and Pittsburg, Kansas. From such evidence the jury might reasonably infer that the four refrigerator cars, at least, were designated for use in interstate commerce before La Lone's crew began to move them, and when he was fatally injured while assisting in the movement of these and other empty cars from the Twenty-third Street yard to the Broadway freight house he was engaged in interstate commerce.

As we view the evidence the trial court erred in sustaining defendant's motion for a new trial. It is therefore directed that the order

and judgment granting a new trial be reversed and the case remanded with directions that the verdict and judgment originally rendered for plaintiff be reinstated as of the date of its rendition. All concur, except *Gantt, J.,* not sitting.