CORA A. POINDEXTER, Administratrix of Estate of HARRY GRANT POINDEXTER, v. CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY, Appellant.—4 S. W. (2d) 1065.

Division One, March 3, 1928.

*Charles A. Houts* and *D. E. Keefe* for appellant; *H. N. Quigley* and *S. W. Baxter* of counsel.

*Charles P. Noell* for respondent; *Glen Mohler* of counsel.

RAGLAND, J.—Plaintiff's intestate, Harry Poindexter, was in the employ of defendant as car inspector and light repair man in its switchyard at Terre Haute, Indiana. On the morning of November 4, 1922, while he was standing in an open space between two freight cars on one of its tracks, engaged in repairing a coupler, defendant's servants, negligently it is alleged, kicked two other cars in on the same track and against the string of cars on one side of the open space, causing them to run over him. His death instantly followed. Re-

spondent seeks a recovery under the Federal Employers' Liability Act. In the trial court she had judgment for $17,500.

The crucial question in the case, the only one of any real importance, is whether Poindexter at the time of his injury and death was employed in interstate commerce. Such facts as have a bearing on that question will therefore be first stated and considered. The conclusion reached with respect to them may render the consideration of others unnecessary.

At the time of the occurrences herein referred to, appellant was a common carrier by rail and as such was engaged in both interstate and intrastate commerce. It maintained a large switchyard at Terre Haute, Indiana, which consisted in part of a main lead track with which other tracks, both leads and stubs, connected by means of switches. The tracks other than the main lead were numbered and each was used for a particular purpose. In distributing cars to the several tracks the switching crew would pull them up to the west end of the main lead and then push or kick them back east through the switches.

The Pennsylvania Railroad Company, likewise a carrier engaged in both interstate and intrastate commerce, also maintained an extensive switchyard at Terre Haute. Between that company and the appellant there existed an arrangement for the interchange of cars; pursuant to such arrangement an engine and crew of the Pennsylvania would at the end of each day, near midnight, bring over to appellant's yard all cars received at the Pennsylvania yard intended for appellant, and take back all cars in appellant's yard intended for the Pennsylvania. In furtherance of the plan of interchange just noted, appellant's switching crews placed all cars intended for the Pennsylvania on track No. 9 in its yard. The cars so placed included cars of all descriptions—loaded, empty, interstate, intrastate, those deliverable to the Pennsylvania as a connecting carrier and those which would be at "home" when they reached the Pennsylvania yards. Track No. 9 was used for no other purpose. The cars placed on it were all coupled up before the close of the day, so that the Pennsylvania crew would have nothing to do but attach their engine preparatory to starting them on their journey to the Pennsylvania yards.

It was Poindexter's duty to inspect all cars in appellant's switchyard, and to repair such bad-order cars as he found, if such cars could be put in condition by a "light repair." He worked from 7:15 in the morning until 3:15 in the afternoon. On the morning of November 4, 1922, a local freight train which had come in from Indianapolis during the night or early morning was standing on track No. 1. In this train there were two empty Pennsylvania coal cars. A knuckle on the end of one of them was out of order, or else it was an emergency knuckle which it was necessary to replace with

a regulation knuckle. Whether it was the one or the other is not material. The condition of the coupler was either observed by Poindexter while making his rounds, or his attention was called to it by a member of the switching crew which came on duty at the same time he did. In any event he requested the foreman of the crew to leave an open space between that car and other cars when it was placed on track 9, so that he could put the coupler in order. The switching crew then began "breaking up" the local freight train. Between 9:30 and ten o'clock that morning they switched the two empty Pennsylvania coal cars on to track No. 9. They were the first cars put on track 9 that day, and they were the only ones taken out of the local freight train which were placed on that track. They were pushed or kicked some distance east of the switch; the coupler that required attention was on the west end of the westernmost of the two cars. Later on an empty box car was kicked on to track 9; a brakeman rode it down and "spotted" it within a few feet of the Pennsylvania car with the defective coupler. Still later another empty box car and a car loaded with gravel were switched on to track 9. About eleven o'clock Poindexter began work on the defective coupler. It is inferable that the three cars which were immediately west of the open space that had been left for him were coupled together. But in any event the car on which he was at work had at no time been coupled to the cars west of him. By reason of the open space left for him the two empty coal cars had remained isolated from the others. While he was engaged with the coupler the switching crew kicked two loaded coal cars on to track 9 with such force that they ran against the string of three cars, causing the latter to suddenly move toward the east. Poindexter was knocked down and crushed under the wheels of the car that had been nearest to him on the west.

The car loaded with gravel was en route to Caseyville, Illinois. That car was put on track 9 for delivery to the Pennsylvania as a connecting carrier. The two box cars were put on that track in compliance with requisitions made through the Pennsylvania for interstate shipments, the destinations of the shipments having been stated in the orders. With respect to the empty coal cars, the evidence discloses merely that they were brought into appellant's yard in a local freight train which came from Indianapolis, and that they belonged to the Pennsylvania Railroad Company.

If Poindexter at the time of his injury had been making his rounds for the purpose of inspecting indiscriminately both interstate and intrastate cars, he would unquestionably have been employed at that time in interstate commerce. [St. Louis & San Francisco Ry. v Scale, 229 U. S. 156, 161; Erie Railroad Co. v. Winfield, 244 U. S 170, 173.] But he had stepped aside from his general line of duty and was engaged in a specific work, namely, repairing a coupler on

an intrastate car. This car was not a part of an interstate train. If the string of cars that the Pennsylvania hauled daily from appellant's yard to its own be considered a "train," then the "train" for November 4th had not been completed, but was being made up at the time of Poindexter's injury. The intrastate car on which he was working had never been put into the train. It had purposely been left disconnected from the other cars in order that he could work on it and thereby put it in condition to go into the train. As a unit of transportation that car was in no way related to the interstate cars standing on the same track. Their handling and movement was in no respect dependent upon the intrastate car being put in order or moved. The mere custom of coupling together both interstate and intrastate cars in order that all could be hauled with one movement from one railroad yard to the other could not of itself have made a preliminary repair on one of the intrastate cars a work in furtherance of interstate commerce. On its facts this case is clearly distinguishable from LaLone v. Terminal Ry. Co., 293 S. W. 379; N. Y. Central Railroad Co. v. Carr, 238 U. S. 260; Penna. Co. v. Donat, 239 U. S. 51; and L. & N. Railroad Co. v. Parker, 242 U. S. 13.

As there was no evidence tending to show that the repairing of the coupler on the intrastate car was designed to, or did, in any respect aid or further the interstate commerce in which appellant was engaged, there was a failure of proof that the deceased at the time of his injury was employed in interstate commerce within the meaning of the statute. [Ill. Cent. Railroad v. Behrens, 233 U. S. 473; Erie Railroad Co. v. Welsh, 242 U. S. 303; Minneapolis & St. Louis Railroad Co. v. Winters, 242 U. S. 353.] The trial court should therefore have sustained defendant's demurrer to the evidence. Its judgment is reversed. All concur.