Edward C. Spencer, Appellee, v. Chicago and North Western Railway Company, Appellant.

Gen. No. 32,431.

Opinion filed June 20, 1928.

Nelson J. Wilcox and I. C. Belden, for appellant.

Finn & Miller, for appellee; Frank Johnston, Jr., of counsel.

Mr. Justice Wilson delivered the opinion of the court:

This is an action for personal injuries sustained by the plaintiff, Edward C. Spencer, while in the employ of the defendant, Chicago and North Western Railway Company, by reason of an accident at or near defendant's California avenue yard on the 14th of October, 1926. A trial resulted in a verdict of the jury for the sum of $30,000, which was reduced by the trial court to the sum of $22,500 the plaintiff having remitted $7,500 and judgment entered thereupon. Motions for a new trial and in arrest of judgment were overruled and from the judgment this appeal is perfected.

The facts show that the plaintiff, at the time of the accident was 42 years of age and had been employed

by the defendant for 16 years and continuously for four years prior to the injury. He was what was known as a brakeman-collector and, on the morning in question, arrived at the California yards at 6:10 A. M. The train upon which plaintiff was employed was known as No. 29 and consisted of seven passenger coaches and a combination car commonly known as a baggage and smoking car. After having been made up, this train proceeded from the California yards, at or near Kedzie avenue, which was a point about three and one-half miles from the Chicago terminal, to Maywood, Illinois, which was approximately 10½ miles from the Chicago terminal. The train, from the California yards west to Maywood, ran as an empty and, at Maywood, it returned to the Chicago terminal and was known as train No. 36 and carried passengers. Upon reaching the Chicago terminal, five of the cars were cut off, leaving the engine, combination smoker and baggage car and two coaches, which constituted a train, which proceeded from the Chicago terminal to Elmhurst. On this last named trip, the baggage compartment of the combination car was used for the conveyance of express matter which came from points outside the State and was forwarded on this train to Elmhurst and intermediate points for delivery. The train in question was due back at the Chicago terminal after the trip out to Maywood in order to make the return trip carrying the aforesaid express matter at 8:24 a. m. and was known as train No. 39. Plaintiff's duties compelled him to accompany this combination car on all its trips. The making up of the train at the California yard prior to its starting from Maywood was in charge of a man named Dastous. From the facts it appears that the train was in the act of backing out of the yard and was proceeding at the rate of about 15 miles an hour along track No. 6. Plaintiff, at the time, was in the baggage car changing his uniform when Dastous called his attention by shouting to him to ''Come here'' and, upon going upon the

platform he observed that a switch, leading from the track upon which the train was proceeding, to what was known as track No. 5, was open; that there was another train on that track and that there was imminent danger of a collision by reason of this misplaced switch. At this time, Dastous and the plaintiff were standing on the platform of the baggage car and, observing the danger, plaintiff jumped and, as a result, his foot caught in a frog and he fell and sustained the injuries in question. The baggage car collided with the cars on the switch track and, as a result, the steps of the combination car were torn off and the corner demolished.

Dr. Arthur R. Metz testified that he was a surgeon and had been attending the plaintiff and testified that there had been a fracture of the proximal end of the tibia or large bone below the knee which extended from the joint down the bone for a distance of four or five inches and that the bone had been spread open a half inch or so; that a metal bolt had been put through the upper end of the bone so as to bring this together, which was held in place by small ivory pegs or nails; that the X-ray pictures showed a certain amount of atrophy in the bone.

It also appears from the testimony of the plaintiff that, after the accident, he was taken to the Washington Boulevard Hospital where he was under the care of physicians from October until the following July; that he was able to get about at this time only with crutches; that, after being discharged from the hospital in July, he was compelled to use a cane continuously; that he cannot move the leg below the knee and cannot carry anything heavy; that he has suffered many falls because of the paralysis of the leg.

Dr. William Hessert, witness for plaintiff, testified that he was a physician and had made an examination of the plaintiff and that the left leg, both above and below the knee was much thinner than the right and

that the thigh was an inch and a half less in circumference. The region of the left knee showed considerable deformity in that there was an outward bowing or angulation below the knee and a thinning of the outerside of the knee, and that there was a muscular paralysis of the muscles of the leg, extending downward; that the joint does and will produce pain and weakness and that the muscular paralysis prevents lifting the leg sufficiently to get over obstructions. In his opinion the condition was permanent.

The action is based upon section 1 of the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321, which provides, among other things, as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States * * *, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employes of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

It is urged on behalf of the defendant, as a ground for reversal, that the plaintiff, at the time of the accident, was not engaged in interstate commerce, but that the primary purpose of attaching the combination baggage and smoker car in question to the train was for the purpose of conveying passengers on the trip from Maywood to the Chicago terminal and that this trip was a separate and distinct trip for the purpose of intrastate commerce only, namely, the carrying of passengers, and the fact that this car was to be used later, on the return trip to Elmhurst, for the purpose of carrying interstate commerce, was too remote to bring the accident in question within the meaning of the statute.

On the other hand it is urged on behalf of the plaintiff, that the plaintiff was employed in and about this particular car and that it was attached to the train on the trip to Maywood in order to be ready for the purpose intended, namely, that, upon its return to the Chicago terminal, it was to be used for the carrying of interstate commerce and the duties of the plaintiff were such that he was compelled to be with this car throughout its entire progress and consequently, at the time of the injury, he was employed in interstate commerce, or in work so closely related to it as to be primarily a part of it. It is urged that the combination car in question was to be used for interstate commerce and that the hauling of said car on this train to Maywood was an initial move for the purpose of its use later in the conveying of interstate commerce from the Chicago terminal to Elmhurst and intermediate points.

It may be stated as a general principle of law, as laid down by the various decisions, that, in order that the plaintiff might avail himself of the benefit of the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, it was not necessary that the train upon which he was employed was, at the time, in the actual conveyance of interstate shipments. The rule has been extended, by interpretation, so as to include those primary movements of cars which are necessary for the purpose of making up or forming a train which has for its purpose the transportation of interstate shipments. The testimony seems to be clear that the baggage car when placed in position, or located at the Chicago terminal, was to be used for the purpose of transporting goods received from outside of the State to their final destination within the State and this would be a forwarding of interstate shipments and would bring the train from that time on under the category of "engaged in interstate commerce."

As to the proposition that the preparation of a train for use in interstate commerce comes within the act, see *Baltimore & O. R. Co. v. Darling,* 3 F. (2d) 987, where the court in its opinion says:

"But this possibility did not alter the fact that, as plaintiff testified, he 'was building a train on that track'; in other words, the fact that he was controlling the movement of a car for the very purpose of making it a part of an interstate train soon to move on in interstate commerce. This work was, in our judgment, so closely related to interstate commerce as to be practically a part of it. *Reap v. Hines,* 273 F. 88 (C. C. A. 2); *Shanks v. Railroad Co.,* 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; *Erie R. R. Co. v. Szary,* 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794."

A case very much in point is that of *La Lone v. St. Louis Merchants' Bridge Terminal Ry. Co.,* 316 Mo. 835, 293 S. W. 379, decided February 16, 1927, and not yet reported in the State report. From the facts in this case it appears that there was a custom of making up a train which was located or spotted at a certain location in the city of Tulsa and that shipments to Tulsa would come to that particular point to be loaded on this train; that when there was a sufficient amount of freight to justify, the freight would be loaded and would be moved forward on its trip. The court in its opinion, after citing a number of cases, says:

"It is not just as plain, and quite within the reasoning of the above cases, that the movement of these same cars in their empty condition from the Twenty-third Street yard to the Broadway freight house for the purpose of being immediately loaded thereat with interstate freight and immediately moved therefrom in interstate commerce, was *a preparatory movement in aid of, a necessary incident to, for the purpose of furthering, and so closely connected with* the movement of these same cars when loaded with interstate freight as to be a part of such interstate movement?

The movement of these empty cars to the Broadway freight house was a part of the round trip duty resting upon respondent, and on the prompt, faithful, and complete performance of which the movement of loaded cars destined for interstate points depended.''

To the same effect is *Patterson v. Pennsylvania R. Co.,* 284 Pa. 577.

This court had occasion to consider this question in the case of *White v. Jackson,* 221 Ill. App. 129. The court in its opinion, says:

''From these illustrative cases it may be said that a railroad employee injured while engaged in the movement of a car incidental to its intended employment for interstate transportation is under the federal act. In some of the cases cited by defendant the next use of the instrumentality, whether intrastate or interstate transportation, was undetermined at the time of the injury. Such a case is *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353 (13 N. C. C. A. 1127).''

It is urged on behalf of counsel for the defendant that, at the time of the accident, plaintiff was not engaged in interstate commerce and our attention is particularly called to the case of *Illinois Cent. R. Co. v. Peery,* 242 U. S. 292. We have examined the facts in that case and find that at the time of the accident involved the plaintiff was riding upon a caboose attached to an engine, and was on a return trip after having completed his services in and about the transportation of interstate commerce, and that there was no intention to engage further in that act. We cannot say that this case is applicable, and we are of the opinion that, if the facts had been reversed and the plaintiff in that case was riding in the same manner to a point where he was to begin services in interstate commerce, the ruling of the court would have been different because he would then have been engaged in a natural movement for the purpose of engaging in interstate commerce.

We have examined carefully the case of *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556, also relied upon by the defendant, and find from the facts as stated in the opinion that the plaintiff in that case was employed in a machine shop repairing locomotives used in transportation, that on the day in question he was not engaged in that service, but was engaged solely in taking down and putting into a new location in the machine shop an overhead countershaft which was to be used in connection with some machinery in the shop. The court in its opinion expressly points out this distinction.

From the facts in the case at bar, as disclosed by the record, we are of the opinion that the question as to whether or not the plaintiff was engaged in a service for the defendant company which had for its purpose the use of a combination car for forwarding interstate shipments was a question for the jury. The fact, also, as to whether or not the placing of the combination car on the train running to Maywood was for the primary purpose of conveying it to the Chicago terminal on the same train in order that it should be used in interstate commerce was a question for the jury. It was urged at the trial by counsel for the defendant that it was used for the conveyance of passengers from Maywood to Chicago and was so originally intended. It is insisted on the other hand by counsel for the plaintiff that, at this time in the morning, there was a great number of incoming suburban trains and it would not be possible to make the connection on the return trip from Maywood; that the connecting of the combination car with the train prior to its trip to Maywood was a practical proposition of railroading which avoided the necessity of blocking traffic on the return trip. These were all questions of fact for the jury to consider.

The Supreme Court of this State in the case of *Bolle*

*v. Chicago & N. W. Ry. Co.,* 324 Ill. 479, in its opinion on page 482, says:

"Whether or not at the time of the accident plaintiff was employed by defendant in interstate commerce was a controverted question of fact upon which plaintiff had a constitutional right to a trial by jury. This question of fact was the main issue in the case. Whenever an issue is made in a case and evidence must be introduced to maintain the issue, controverted questions of fact are involved which include not only evidentiary facts, but ultimate facts, even though there be no conflict in the testimony. *(Chicago, Title and Trust Co. v. Ward,* 319 Ill. 201; *Frank v. Hoskins Co.,* 323 id. 46.) The evidence in the case was not such that all reasonable minds must necessarily agree that at the time of the accident plaintiff's employment was not such as to bring him within the provisions of the Federal Employers' Liability act."

The Supreme Court of the United States in the case of *Erie R. Co. v. Welsh,* 242 U. S. 303, in sustaining a decision of the Ohio Supreme Court, affirming a case where the jury had decided that the plaintiff was not engaged in interstate commerce, lays down the following rule:

"The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the 'F. D. yard' as to be part of it or a necessary incident thereto. *New York C. & H. R. R. Co. v. Carr,* 238 U. S. 260, 264; 59 L. ed. 1298, 1300, 35 Sup. Ct. Rep. 780, 9 N. C. C. A. 1; *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556, 559, 60 L. ed. 436, 438, L. R. A. 1916C, 797, 36 Sup. Ct. Rep. 188. And this depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony

and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interstate commerce. The state courts held there was no such question, and we cannot say that in so concluding they committed manifest error. It results that, in the proper exercise of the jurisdiction of this court in cases of this character, the decision ought not to be disturbed. *Great Northern Ry. Co. v. Knapp,* 240 U. S. 464, 466.''

We are of the opinion that the question was one of fact which was properly submitted to a jury and, in view of the fact that we cannot say the verdict was manifestly against the weight of the evidence, we find no reason for disturbing the judgment on the facts.

Counsel for defendant raises several objections to certain instructions given on behalf of the plaintiff. While these objections were argued at length in the brief, they are not set out in full but referred to by number. This court should not be required to search for such matters but they should be contained in the argument. *General Platers Supply Co. v. L'Hommedieu & Sons Co.,* 228 Ill. App. 201. It is attempted to cure this, however, by restating the instructions in full, together with the arguments thereon in the reply brief filed herein, but this does not cure the objection. We have examined the instructions, however, and do not find that there is error sufficient to cause a reversal of the case.

It is also urged that the verdict is excessive. From the medical testimony it appears that there is a permanent condition of injury, resulting in a practical loss of the use of the leg, and the trial court saw fit to accept the remittance of $7,500, and enter judgment for the sum stated in the judgment. The trial court had a full opportunity of seeing and observing the condition of the plaintiff, as well as hearing the testimony and observing the witnesses, and we see no rea-

son to disturb the judgment on the ground that it is excessive. Every presumption and intendment should be indulged in favor of the judgment.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HOLDOM, P. J., and TAYLOR, J., concur.